Cuevas v. Falkner, Commissioner of Education.

Appeal from the District Court of San Juan.

No. 29.—Decided November 11, 1905.

Free Expression of Opinion.—Although every person has a perfect right to speak and write the truth and express opinions in regard thereto, he will, however, be held responsible for an abuse of this personal privilege which must be made use of, like all other privileges, in such a way as not to infringe the rights of others.

Authority of Commissioner of Education—Teachers—Responsibilities.—In accordance with the school law the Commissioner of Education has authority to suspend from employment any teacher accused of cruelty, immorality, incompetence, insubordination, or neglect of duty, and dismiss him after an investigation wherein the teacher may be heard in his own defense.

Id.—Insubordination—Dismissal.—Teachers are bound to work in harmony with the Department of Education, and in case of dissatisfaction with a decision of the department they must address their complaints thereto, and the publication of articles in newspapers by a teacher, violently attacking the Commissioner in regard to his official acts, constitutes insubordination which will justify the dismissal of the teacher and cancellation of his certificate.

ID.—CERTIFICATES OF TEACHERS.—The certificate of a graded teacher is simply an evidence of his capacity to discharge the duties of teacher of a second grade school, but is not a title which would confer upon him an office which is property in the purview of the law.

The facts are stated in the opinion.

*Mr. Sarmiento* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

The plaintiff herein, who is also the appellant, was a school-teacher holding a second-class certificate certifying that he was qualified to teach in the public schools of Porto Rico. The defendant, who is the appellee, is the Commissioner of Education for this Island, and as such, of course, the head of a department and a member of the Executive Council.

Cuevas was granted a second-class certificate as a teacher on the 1st of July, 1904. Shortly thereafter, he set out for the Continent on the excursion in a Government transport, with other teachers, and attended a summer school at Harvard University, near Boston. On returning he saw proper to publish a series of some half a dozen articles in the *Heraldo Español*, criticising Mr. Lindsay, who was then Commissioner of Education, and complaining of the manner in which the voyage had been conducted, and of the fare which the teachers had furnished to them in Boston, and incidentally of the pepper in the soup. His last shot was directed at Mr. Lindsay, and is signed, like the others, with his full name and title "Javier Cuevas Zequeira, graded teacher." Most of the articles are harmless although bombastic, but the last is a direct attack upon his chief, the head of the Department of Education, and reads as follows:

"To Mr. Lindsay: I am the discordant note in the concert of praises addressed to you. So much the better. Whilst most people lift up to you clouds of incense I cause to descend upon you the truth; while all the people envelop you in an atmosphere of flattery, I encompass you with something ferreous, something that oppresses, that

embitters, that kills despots, that throws down idols; truth on an inaccessible pedestal; justice. You are an unsuccessful official. You carried servants to see Liberty. You have caused the poor to expend the money destined for the support of their families; the indigent do not make excursions for recreation. You compelled the teachers to dissipate their miserable salaries in an excursion from which they bring home the bitter recollection of having become acquainted with Justice, for which we eternally sigh in our own country. You have exhausted our energies in travel instead of using our efforts in assuring our rights, which are submitted to the caprice of a school supervisor more or less passionate. You, if you had not made that trip, which was a sacrifice for the teachers, would have been able to leave an affectionate and eternal recollection in our hearts by the use of a single phrase, as you are sovereign in your department, with these words, which would have only meant a reward for our efforts: 'Inasmuch as you are not free men, I make you free teachers.' That would have made you great; but you did not do it, because you are small, because you do not love justice, and because you have violated the law.''

After the publication of these articles, and during the absence of the Commissioner from the Island, E. W. Lord, the Assistant Commissioner, suspended Cuevas from his position as a teacher, and he was afterwards notified to make his defense, which not being satisfactory, his certificate, as a second-grade teacher, was revoked, under authority of the School Laws of Porto Rico.

In the meantime he had been elected by the local school board of Rio Grande as a rural teacher, and this election had to be cancelled when he lost his certificate.

He brings this suit against Mr. Falkner, as Commissioner of Education, seeking a judgment of the court, to nullify the resolution canceling his certificate and to recover his salary as a teacher, and besides, damages for being deprived of his occupation.

His case, notwithstanding its novelty, was carefully considered in the district court; a trial was had, evidence was introduced, arguments were made, authorities were cited, law points were investigated, and finally judgment was rendered

against the plaintiff, that he take nothing by his suit, and be required to pay all costs incurred therein. He brings the case to this court on the ground that neither Lord, the Assistant Commissioner, had any authority to suspend him, nor Mr. Falkner, the Commissioner of Education, to revoke his certificate, claiming, as a citizen of Porto Rico, a constitutional right under the first amendment to the Constitution of the United States to print what he pleases in the newspapers, whether the chief of his department like it or not. His counsel in argument says that he does not contend that the Constitution of the United States is in force in Porto Rico, but that the constitutional right of free speech and a free press exists here, with or without the Constitution.

While every man has a right to speak and write and print the truth, and his opinions in regard thereto, he is responsible for the abuse of the privilege, and he must use it, like all other personal privileges, in such a way as not to infringe on the rights of other people. It is difficult to see any application whatever to be made of this amendment of the Constitution, or of the principle of free speech and a free press to the case at bar.

The plaintiff seems to have brought this suit under the mistaken idea that his certificate as a second-grade teacher conferred upon him an office with a salary attached which was property in the purview of the law, and of which he could not be deprived by a resolution such as the one taken in his case. This must be regarded as an entirely erroneous view. His certificate merely stated that he was qualified to teach a second grade, and under it he could be elected as a teacher in the public schools of Porto Rico, subject to the School Laws of the Island, and the regulations of the department, made in accordance therewith. To permit a teacher to rush into the newspapers, libel his superior officers, or hold them up to public ridicule and contempt, and accuse them of violating the law, on the pretense of free speech and a free press, would be to subvert all discipline and to ruin the organization of the

educational department.   No department of the Government could be conducted on such principles.   Discipline is necessary in civil, as well as in military organization.   In the case at bar the Commissioner of Education and his assistant proceeded in strict conformity with the law.   Section 42, on page 20 of the English pamphlet, and page 22 of the Spanish reads as follows:

"Teachers shall be suspended from their position by the Commissioner of Education or by the school board for cruelty, immorality, incompetency, insubordination or negligence in the performance of their duties, and said Commissioner may reinstate them, or dismiss them and cancel their licenses, after an investigation which shall be held and in which the school board may file a statement, and said teachers shall be heard in their own defense either verbally or in writing. *Provided, That no suspension by a school board shall be valid for more than five days; and the teacher thus suspended shall not be again suspended for the same cause by said board during the school year in which the first suspension took place."*

This section of the law gives the Commissioner of Education authority to suspend any teacher for cruelty, immorality, incompetency, or insubordination, or for negligence in the performance of his duties, and to dismiss him after an investigation, in which such teacher may be heard in his own defense, either verbally or in writing.   This section of the law was faithfully followed by Mr. Falkner and Mr. Lord in suspending and dismissing the plaintiff in this case.

Article 5 of the Rules and Regulations, on pages 53 and 54 of the English, and page 57 of the Spanish, reads as follows:

"The responsibility for the maintenance of good schools rests upon the principals and teachers of Porto Rico.   They are supposed to know the School Law and to familiarize themselves as far as possible with all reports of the Department of Education, so that they may understand its aims and its plans so far as the general educational policy that it is pursuing, is concerned.   They are expected to work sympethetically and harmoniously with the department and to give it their full confidence, and to look to it as their best friend and helper

in all that makes for success in their work. A teacher who does not have confidence in the department, in its intentions and purposes, should sever his connection with the teaching force. He should always appeal first to the department, and not write articles to the newspapers or engage in discussion or gossip with his neighbors about things which concern primarily his relations with the Department of Education. He is expected to take the initiative in doing everything he can for the good of the schools. So long as his acts are not inconsistent with the School Laws or general policy of the department every teacher and principal will b'e sustained by the department. A few of the more general duties pertaining to teachers and principals may be enumerated as follows:

(10) Teachers shall follow at all times the directions or orders of the Commissioner of Education or his representatives.

(11) Teachers should study the School Laws, especially those which refer to teachers in the public schools.''

It will be seen that the teacher is required by these rules to work sympathetically and harmoniously with the Department of Education, and to give it his full confidence, and a teacher who does not have confidence in the department is enjoined to sever his connection with the teaching force. He is also advised and required in case of dissatisfaction to appeal first to the department, and not to write articles to the newspapers, or engage in discussion or gossip with his neighbors about things which concern primarily his relations with the Department of Education.

This latter course is exactly the one which the plaintiff in this case followed in the conduct which caused his dismissal; and of course, being a violation of the regulations, this was a plain case of insubordination, for which he was properly and justly first suspended, and then, after an investigation, dismissed, and his certificate cancelled by the proper authorities.

How can he expect the district court, or this court to revoke this resolution of the Department of Education, or to require his salary to be paid him by the Government and damages for his dismissal? There is no warrant for such a

judgment in any law known to us. A plainer case of insubordination could hardly be made out than the one which the plaintiff himself displays to the court in this record, and any other course than that taken by Commissioner Falkner in the premises would have been subversive of discipline and a dereliction of duty on his part.

As the plaintiff has no case, and never had any either against the Commissioner or the Government, the judgment of the district court should be in all things affirmed.

*Affirmed.*

Chief Justice Quinones and Justices Hernandez, Figueras and Wolf concurred.